| | |
|---|---|
| ALLIED PROPERTY AND CASUALTY INSURANCE COMPANY,  )<br>)<br>Plaintiff,  )<br>)<br>v.  )<br>)<br>KARIN BOURISAW,  )<br>)<br>Defendant.  )<br>)<br>———————————————— )<br>)<br>KARIN BOURISAW,  )<br>)<br>Third Party Plaintiff,  )<br>)<br>v.  )<br>)<br>STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,  )<br>)<br>Third Party Defendant.  ) | Case No. 4:16-cv-01486-SPM |

## MEMORANDUM AND ORDER

This matter is before the Court on the Motion for Summary Judgment filed by Third-Party Defendant State Farm Mutual Automobile Insurance Company ("State Farm"). (Doc. 31). State Farm seeks summary judgment on the claim for a declaratory judgment brought against it by Third-Party Plaintiff Karin Bourisaw ("Bourisaw") and on State Farm's own counterclaim for a declaratory judgment against Bourisaw. Bourisaw has not filed any response.[1] The parties have

---

[1] Bourisaw's response to the motion for summary judgment was initially due on September 28, 2017. (Doc. 27). On September 29, 2017, the Court granted Bourisaw until October 13, 2017 to file a response. (Doc. 32). Bourisaw did not file a response.

consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). (Doc. 24). For the reasons stated below, the Court will grant State Farm's motion for summary judgment.

I. **FACTUAL BACKGROUND**[2]

The facts are not in dispute. On July 17, 2014, Bourisaw was injured in a car accident while a passenger in a vehicle operated by Penny Carlyon. The vehicle in which Bourisaw was a passenger was rear-ended by a vehicle operated by a driver (the "tortfeasor"), who is alleged to be at fault for the accident. At the time of the accident, the tortfeasor had liability insurance with a limit in the amount of $100,000 per person. Bourisaw recovered the full limit of the tortfeasor's insurance policy. Two other insurance policies are also relevant. Carlyon had a policy of insurance on her vehicle with Allied Property and Casualty Insurance Company (the "Allied Policy"), with a limit for Underinsured Motorist Coverage in the amount of $100,000 per person. In addition, Bourisaw had a policy of insurance with State Farm, Policy Number 407 0142-D01-13C (the "State Farm Policy"), with a limit for Underinsured Motor Vehicle Coverage in the amount of $100,000 per person.

The instant lawsuit began as a dispute between Allied and Bourisaw over whether Bourisaw was entitled to underinsured motor vehicle coverage under the Allied Policy. The Court has already granted summary judgment in Allied's favor on the claims relevant to that dispute, finding that Bourisaw was not entitled to coverage under the Allied Policy because the tortfeasor's vehicle was not an "underinsured motor vehicle" as defined in the Allied Policy. (Doc. 30).

---

[2] Unless otherwise specified, these facts are taken from State Farm's Statement of Uncontroverted Material Facts in Support of Summary Judgment, Doc. 31-2, to which Bourisaw has not filed a response.

On October 16, 2016, Bourisaw filed a third-party complaint against State Farm, seeking a declaratory judgment that she is entitled to underinsured motor vehicle coverage under the State Farm Policy. On March 27, 2017, State Farm filed a counterclaim, seeking a declaratory judgment stating that Bourisaw is not entitled to underinsured motor vehicle coverage under the State Farm Policy. State Farm now moves for summary judgment on Bourisaw's third-party complaint and on its counterclaim against Bourisaw.

**II.   LEGAL STANDARD**

The standards applicable to summary judgment motions are well settled. Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). *See also Hill v. Walker*, 737 F.3d 1209, 1216 (8th Cir. 2013). "The movant 'bears the initial responsibility of informing the district court of the basis for its motion' and must identify 'those portions of [the record] . . . which it believes demonstrate the absence of a genuine issue of material fact.'" *Progressive Cas. Ins. Co. v. Morton*, 140 F. Supp. 3d 856, 860 (E.D. Mo. 2015) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). If the movant meets its burden, then the burden shifts to the nonmovant to submit evidentiary materials that "designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324 (quotation marks omitted).

**III.   DISCUSSION**

In its motion for summary judgment, State Farm argues that Bourisaw is not entitled to underinsured motorist coverage under the State Farm Policy because the tortfeasor's vehicle is not an "underinsured motor vehicle" under the terms of the State Farm Policy or the applicable law.

## A. Choice of Law

The Court begins with a discussion of what state's law applies to this dispute. State Farm argues that Illinois law applies, and Bourisaw has filed nothing to indicate that the law of any other state applies. The Court agrees that Illinois law applies.

The Court's review of the State Farm Policy reveals that it contains a choice-of-law provision stating, "Illinois will control in the event of any disagreement as to the interpretation and application of any provision in the policy . . ." State Farm Policy Booklet, General Terms ¶ 14(a), Doc. 22-3, at 20.[3] However, State Farm does not mention that choice-of-law provision or rely on that provision in making its argument that Illinois law applies; instead, State Farm relies on the choice-of-law principles that apply in the absence of a choice-of-law provision. It is unclear whether State Farm's decision not to mention this provision was merely an oversight, or whether there is some reason why that provision does not apply (or would not be enforceable) in this case. Regardless, even assuming *arguendo* that the Illinois choice-of-law provision in the State Farm Policy does not require the application of Illinois law, the Court agrees with State Farm that the relevant choice-of-law principles would require the application of Illinois law.

Where, as here, federal jurisdiction is based on diversity of citizenship, the district court applies the choice of law rules of the state in which it sits. *Winter v. Novartis Pharms. Corp.*, 739 F.3d 405, 410 (8th Cir. 2014); *Heating & Air Specialists, Inc. v. Jones*, 180 F.3d 923, 928 (8th Cir. 1999). "Missouri has adopted sections 188 and 193 of the Restatement (Second) Conflict of Laws (1971) for determining choice of law issues as they relate to insurance contracts." *Accurso v. Amco Ins. Co.*, 295 S.W.3d 548, 551 (Mo. Ct. App. 2009) (citing *Hartzler v. Am. Fam. Mut. Ins. Co.*, 881 S.W.2d 653, 655 (Mo. Ct. App. 1994)). Section 188 provides that in the absence of an effective

---

[3] Page numbers refer to the numbering in the electronically filed document.

choice of law by the parties, the law that applies is that of the state that "has the most significant relationship to the transaction and the parties under the principles stated in § 6.[4]" Restatement (Second) of Conflict of Laws, § 188(1). "[T]he contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include: (a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicil, residence, nationality, place of incorporation and place of business of the parties." *Id.* § 188(2). Section 193 provides that the rights created by an insurance contract "are determined by the local law of the state which the parties understood was to be the principal location of the insured risk during the term of the policy, unless with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the transaction and the parties, in which event the local law of the other state will be applied." *Id.* § 193. Comment b to Section 193 also states that "[t]he location of the insured risk will be given greater weight than any other single contact in determining the state of the applicable law provided that the risk can be located, at least principally, in a single state" and that "in the case of an automobile liability policy, the parties will usually know beforehand where the automobile will be garaged at least during most of the period in question." *Id.* § 193, cmt. b.

Missouri courts applying the above principles have found that where the parties to a vehicle insurance contract understood that the principal location of the vehicle during the term of the policy would be in a particular state, the law of that state governs a dispute about that insurance contract, at

---

[4] Section 6 directs the court to consider factors including the needs of the interstate and international systems; the relevant policies of the forum; the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue; the protection of justified expectations; the basic policies underlying the particular field of law; certainty, predictability and uniformity of result; and ease in the determination and application of the law to be applied.

least where other factors do not show that another state has a more significant relationship to the parties and the transaction. *See Hartzler*, 881 S.W.2d at 655-67 (relying on § 193 and holding that Kansas law applied to a dispute between insureds and insurer where although the automobile accident at issue occurred in Missouri, the insureds were Kansas residents at the time the insurance policy was issued, the policy was denominated "Kansas Family Car Policy" and contained several references to Kansas and Kansas law, and the insured vehicles were registered and principally garaged in Kansas; noting that Kansas was "the principal location of the insured risk" and finding that Kansas had the most significant relationship to the parties and transaction); *Accurso,* 295 S.W.3d at 552-54 (relying on § 193 and holding that Missouri law applied to an insurance dispute where the motor vehicles at issue were primarily located in Missouri; noting that "the location of the insured risk is given greater weight than any other single contact" and finding that other factors did not show that some other state had a more significant relationship to the parties and the policies at issue).

Here, the State Farm Policy was issued to a resident of Illinois, living at an Illinois address, suggesting that the parties understood that the vehicle would be located primarily in Illinois. *See* State Farm Policy Declarations Page, Doc. 22-1, at 1. Bourisaw provides no basis for any contrary finding. Moreover, other factors show that Illinois has a significant relationship to the State Farm Policy: the Policy was issued by an agent with an Illinois address, the policy explicitly references the Illinois Insurance Code and Illinois Department of Insurance, and the cover of the policy booklet states that it is "**Illinois** Policy Form 9813B." *See id.*; *see also* State Farm Policy Booklet, Doc. 22-2, at 1.

For all of the above reasons, the Court agrees that Illinois law applies to the issues presented in State Farm's motion.

**B. Under Illinois Law, Bourisaw Is Not Entitled to Underinsured Motor Vehicle Coverage Under the State Farm Policy**

Bourisaw seeks a declaration that State Farm owes underinsured motor vehicle coverage to her under the State Farm Policy. State Farm contends that because the limit of liability under the tortfeasor's policy is $100,000 and the State Farm Policy's limit of liability for underinsured motorist coverage is also $100,000, the tortfeasor's vehicle does not qualify as an "underinsured motor vehicle" under the State Farm Policy and Illinois law, and thus Bourisaw is not entitled to underinsured motor vehicle coverage under the State Farm Policy.

Under Illinois law, "the general rules governing the interpretation of other types of contracts also govern the interpretation of insurance policies." *Hobbs v. Hartford Ins. Co. of the Midwest*, 823 N.E.2d 561, 564 (Ill. 2005). "The court's primary objective when construing an insurance policy is to ascertain and give effect to the intention of the parties, as expressed in the policy language." *State Farm Mut. Auto Ins. Co. v. Coe*, 855 N.E .2d 173, 176 (Ill. Ct. App. 2006) (quotation marks omitted). "If the policy language is unambiguous, the policy will be applied as written, unless it contravenes public policy." *Hobbs*, 823 N.E.2d at 564.

The "Underinsured Motor Vehicle Coverage" section of the State Farm Policy states:

> **Insuring Agreement**
>
> *We* will pay compensatory damages for ***bodily injury*** an ***insured*** is legally entitled to recover from the owner or driver of an ***underinsured motor vehicle***.

State Farm Policy, Doc. 22-3, at 3.

The State Farm Policy defines "underinsured motor vehicle," in relevant part, as follows:

> ***Underinsured Motor Vehicle*** means a land motor vehicle:

      2.      for which the total limits of insurance, bonds, and self-insurance for bodily injury liability from all sources:
          a.     are less than the Underinsured Motor Vehicle Coverage limits of this policy; or
          b.     have been reduced by payments to *persons* other than *you* and *resident relatives* to less than the Underinsured Motor Vehicle Coverage limits of this policy.

*Id.* at 2-3.

The Underinsured Motor Vehicle Coverage limit of the State Farm Policy is $100,000. The total limit of the insurance for bodily injury liability for the tortfeasor's vehicle was $100,000. That entire amount was paid to Bourisaw; the amount was not reduced by payments to others. Thus, based on the clear language of the State Farm Policy, the tortfeasor's vehicle is *not* one for which the limit of insurance for bodily liability is "less than" the Underinsured Motor Vehicle Coverage limits in the State Farm Policy, nor is it one for which the limit of insurance has been reduced by payments to persons other than Bourisaw. Under the clear language of the State Farm Policy, the tortfeasor's vehicle is not an "underinsured motor vehicle," and thus Bourisaw is not entitled to underinsured motor vehicle coverage under the State Farm Policy.

The plain language of the State Farm Policy is consistent with well-established Illinois law. The Illinois Insurance Code defines an underinsured motor vehicle as follows:

> For the purpose of this Code the term "underinsured motor vehicle" means a motor vehicle whose ownership, maintenance or use has resulted in bodily injury or death of the insured, as defined in the policy, and **for which the sum of the limits of liability** under all bodily injury liability insurance policies or under bonds or other security required to be maintained under Illinois law applicable to the driver or to the person or organization legally responsible for such vehicle and applicable to the vehicle, **is less than the limits for underinsured coverage provided the insured** as defined in the policy at the time of the accident. The limits of liability for an insurer providing underinsured motorist coverage shall be the limits of such coverage, less those amounts actually recovered under the applicable bodily injury insurance policies, bonds or other security maintained on the underinsured motor vehicle.

8

215 Ill. Comp. Stat. 5/143a-2(4) (emphasis added). Because the tortfeasor's vehicle had a liability limit ($100,000) that is not less than the limit for underinsured coverage in the State Farm Policy ($100,000), the tortfeasor's vehicle is not an underinsured motor vehicle under either this definition or the State Farm Policy's definition, and Bourisaw is not entitled to underinsured motor vehicle coverage.

The result required by the plain language of the State Farm Policy is also consistent with the purpose of underinsured motorist coverage under Illinois law. The Illinois Supreme Court has recognized that "[t]he purpose of underinsured coverage is to put the insured in the same position he or she would have occupied had the at-fault vehicle carried liability coverage in the same amount as selected by the insured in his or her underinsured motor vehicle policy." *State Farm Mut. Ins. Co. v. Villicana*, 692 N.E.2d 1196, 1201 (Ill. 1998). "Underinsured motorist coverage is not intended to allow the insured to recover amounts from the insurer *over and above* the insured's underinsured-motorist policy limit." *Illinois Emcasco Ins. Co. v. Tufano*, 63 N.E.3d 985, 991 (Ill. Ct. App. 2016). *See also Safeway Ins. Co. v. Hadary*, 48 N.E.3d 732, 738 (Ill. Ct. App. 2016) ("[U]nderinsured motorist coverage is intended only to assure compensation for insureds' injuries in an amount equal to their policy limit for coverage; it is not intended to allow insureds to recover amounts from an insurer over and above coverage provided by the underinsured motorist policy."). Here, Bourisaw has already been compensated in an amount equal to her underinsured motorist policy limit ($100,000). Underinsured motorist coverage is not intended to allow her to recover amounts over and above that amount.

In her Third-Party Complaint, Bourisaw also suggests that she is entitled to coverage under the "If Other Underinsured Motor Vehicle Coverage Applies" section of the State Farm Policy. That provision states, in relevant part:

9

**If Other Underinsured Motor Vehicle Coverage Applies**

. . .

    2.    The Underinsured Motor Vehicle Coverage provided by this policy applies as primary coverage for an ***insured*** who sustains bodily injury while ***occupying your car***. . . .

    3.    Except as provided in 2. above, the Underinsured Motor Vehicle Coverage provided by this policy applies as excess coverage.

        a.    If:
            (1) this is the only vehicle policy issued to ***you*** or any ***resident relative*** by the ***State Farm Companies*** that provides Underinsured Motor Vehicle Coverage which applies to the accident as excess coverage; and

            (2) underinsured motor vehicle coverage provided by one or more sources other than the ***State Farm Companies*** also applies as excess coverage for the same accident,

        then ***we*** will pay the proportion of our damages payable as excess that ***our*** applicable limit bears to the sum of ***our*** applicable limit and the limits of all other underinsured motor vehicle coverage that apply as excess coverage.

Doc. 22-3, at 5-6. Bourisaw's position appears to be that this provision indicates that the State Farm Policy's coverage should be "excess" over the amounts paid by the tortfeasor.

This provision is inapplicable here. As State Farm points out, this provision is triggered only "If Other Underinsured Motor Vehicle Coverage Applies." Bourisaw initially contended that other underinsured motorist coverage was provide by the Allied Policy. However, in ruling on Allied's motion for summary judgment, the Court found that the Allied Policy did not provide any underinsured motor vehicle coverage that applies to the accident here. Bourisaw identifies no other "underinsured motor vehicle coverage" that might apply. Thus, this provision simply does not apply to this case. *See Katz. v. State Farm Mut. Auto. Ins. Co.*, 965 N.E.2d 636, 644 (Ill. Ct. App. 2012) ("[T]he plaintiff's reliance on the provisions of the State Farm policy titled, 'If There Is

Other Underinsured Motor Vehicle Coverage' is misplaced because there is not any other underinsured motor vehicle coverage, only the State Farm policy.").

## IV. CONCLUSION

For all of the above reasons, the Court finds that Bourisaw is not entitled to underinsured motorist coverage under the State Farm Policy. Accordingly,

**IT IS HEREBY ORDERED** that the Motion for Summary Judgment filed by Third-Party Defendant State Farm Mutual Automobile Insurance Company (Doc. 31) is **GRANTED.**

**IT IS FURTHER ORDERED** that Third-Party Plaintiff Karen Bourisaw's Third-Party Claim against Third-Party Defendant State Farm Mutual Automobile Insurance Company is **DISMISSED**.

SHIRLEY PADMORE MENSAH
UNITED STATES MAGISTRATE JUDGE

Dated this 16th day of November, 2017.